## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  COREY PHILLIPS, and | ) | |
| | ) | |
| 2.  ELIZABETH KING, Individually and | ) | |
|      on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV - 10-1185-R |
| | ) | CLASS ACTION |
| | ) | |
| 1.  BANK OF AMERICA N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiffs, Corey Phillips and Elizabeth King, as individuals and on behalf of themselves and all others similarly situated (i.e., the members of the Plaintiff Classes described and defined, infra), herein allege as follows:

## I.       JURISDICTION AND VENUE

1.      This Court has original jurisdiction of this action under 28 U.S.C. §§ 1331 and 1332.    The amount-in-controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and there is minimal diversity because certain members of the class are citizens of a different state than any defendant as required by 28 U.S.C., section 1332(d)(2).

2.      Venue is proper in this judicial district because Defendant Bank of America, N.A. ("BOA") is a resident of and does substantial business in the Western District of Oklahoma.

1

## II.        General Allegations

3.        This is a civil action primarily seeking from Defendant Bank of America, damages, restitution and disgorgement of all profits gained as a result of the following wrongful conduct:

4.        A.        taking overdraft fees from Bank of America customers' checking accounts after debit transactions and ATM withdrawals when customers had sufficient funds in their checking account to cover these transactions at the time they were made.

B.        increasing the likelihood of assessing these charges by identifying and publishing inaccurate "available balance" information to customers.

C.        rearranging the Plaintiffs' transactions in such a way as to mathematically insure the maximum number of  overdraft fees would be charged to unknowing customers.

D.        intentionally and/or negligently failing  to adequately notify customers of this practice.

E.        failing to comply with the terms and provisions of the Electronic Fund Transfers provisions of the Consumer Credit Protection Act.  15 U.S.C. § 1693, *et. seq.*

5.        Finally, Plaintiffs seek to enjoin defendants from continuing to conduct such improper activities.  Plaintiffs, for themselves and others similarly situated, bring this action pursuant to the Electronic Fund Transfer Act and the Oklahoma Consumer

Protection Act Okla. Stat. tit. 15 § 751 et seq., as well as Oklahoma common law fraud, negligent misrepresentation, and conversion.

6.     Plaintiff COREY PHILLIPS is a citizen of the State of Texas and is domiciled in Oklahoma County, Oklahoma.  He entered into his contractual relationship with BOA in the County of Oklahoma, Oklahoma, in January 2008 and his account is currently maintained at an Oklahoma County Bank of America branch office.

7.     Plaintiff ELIZABETH KING is a resident of Oklahoma County.  She entered into her contractual relationship with Bank of America in the County of Tulsa, Oklahoma, in September 2008 and her account is currently maintained at a Tulsa County Bank of America branch office.

8.     BOA  is a diversified financial services company providing banking, insurance, investments, mortgage banking and consumer finance to individuals, businesses and institutions in all 50 states and internationally.  Bank of America is "located in" and headquartered in Charlotte, North Carolina.

9.     Bank of America conducts business in all Counties within the State of Oklahoma either physically or by electronic means via the internet.

10.    Bank of America maintains branch offices throughout most of the State of Oklahoma and in most other states.  Individual customer accounts are maintained at these branch offices.

11.    Based on information and belief, the decisions relating to developing, marketing and implementing the actions complained herein originated from Bank of America in Charlotte, North Carolina.  For all plans and decisions that originated from

Bank of America outside of Oklahoma, those plans and decision required approval from Bank of America's Charlotte, North Carolina headquarters, thereby providing Bank of America authority and control over the actions complained about herein.

### III.      Factual Allegations

12.     Bank of America is one of this country's largest consumer banking companies servicing millions of individuals and business customers nationwide.  One of the services provided by Bank of America for customers who open a checking account is a check/debit/ATM card.  This card allows customers to access their checking account funds by using the card to conduct transactions.  Whether it is transactions with vendors or using the card to withdraw cash from an ATM machine, the card is processed electronically so that Bank of America is aware of the use of the card and has the option to accept or decline transactions at the point of sale.

13.     On August 1, 2010, Plaintiff COREY PHILLIPS used his Bank of America check/debit/ATM card to make four  purchases, including a charge of $4.00, at approximately 7:00 p.m. on that date.  Based on information and belief, Defendant Bank of America expressly electronically approved these transactions before the transactions were completed.  At the time of each of these transactions, Mr. Phillips had a positive balance in his account, sufficient to cover the transactions.

14.     On August 3, 2010, Plaintiff COREY PHILLIPS used his Bank of America check/debit/ATM card to make one purchase.   Based on information and belief, Defendant Bank of America expressly electronically approved that transaction before the

transaction was completed.  At the time of each of these transactions, Mr. Phillips had a positive balance in his account, sufficient to cover the transaction.

15.     On July 28, 2010,  Plaintiff COREY PHILLIPS used a handwritten Bank of America check to make a security deposit to his landlord.  The check was post-dated August 5, 2010, on which date a deposit sufficient to cover the amount of the check was to be deposited in his account.  Per his agreement with the landlord, the check was to be held until August 5, 2010.  Because of a mistake by the landlord regarding the date, the check was presented for payment to Stillwater National Bank at approximately 3:30 p.m. on August 4, 2010.

16.     Just after midnight of August 4, 2010, in the early morning hours of August 5, 2010, Bank of America rearranged the transactions, including the check listed in paragraph 15 and the check/debit/ATM card purchases listed in paragraphs No.'s 13 and No. 14 in largest to smallest dollar amounts before posting them to the account shortly after midnight of August 4, 2010.  Thus, the charge of $4.00, made the evening of August 1, 2010 became the last charge to be posted to that account on that date.

17.     The actions of BOA in "rearranging" was intentional on BOA's part.  BOA knew the effect of rearranging the transactions before it commenced posting them in order from largest to smallest.  This is clear because the first credit transaction posted was a credit in the amount of $15.43, from COREY PHILLIPS' "Keep the Change" savings account.  That transfer was made prior to any posting, was done of debits to the account, and had no practical effect, based upon the order in which the transactions were posted, other than to create an additional $10.00 "overdraft item fee."

18.     Notwithstanding that sufficient funds were in Plaintiff COREY PHILLIPS' Bank of America account to cover each of these transactions occurring between August 1, 2010 through August 3, 2010, Defendant assessed and automatically deducted from Plaintiff's checking account four $35.00 "overdraft item fee for activity of 08-04" charges totaling $140.00 and a $10.00 charge for an "overdraft protection transfer fee for activity of 08-04."

19.     The result of this "rearrangement" of the debits and checks was that, although the total amount of "overdraft" ($71.70) resulting from the posting of the check was the same, the defendant BOA charged more than twice that amount, $150.00, to Plaintiff COREY PHILLIPS' account.

20.     Based on information and belief, the charges incurred by Plaintiff COREY PHILLIPS are representative of hundreds of millions of dollars of insufficient/overdraft fees that Bank of America assessed its customers and automatically deducted from their checking accounts when there were sufficient funds in their accounts at the time of the transaction. This is an especially egregious wrongful taking of customers' money from their checking accounts because Bank of America specifically approved each of these transactions and knew at the time it approved the transaction there were sufficient funds in the account to cover the transaction.

21.     On March 5th through March 8th of 2009, Plaintiff ELIZABETH KING used her Bank of America check/debit/ATM card to make 9 purchases, including a charge on March 7, 2009 for $6.76.  Based on information and belief, Defendant Bank of America expressly electronically approved these transactions before the transactions were

completed.  At the time of each of these transactions, Ms. King had a positive balance in her account.

22.     On March 2, 2010, Plaintiff ELIZABETH KING used an automated check system offered through Bank of America by which Bank of America automatically sends the check to a payee so that it will be received by the payee on a requested date. The Payee presented the check for payment on March 9, 2009.

23.     Bank of America then rearranged the transactions, including the check listed in paragraph No. 22 and the debit check/debit/ATM card purchases listed in paragraph No. 21 from largest dollar amount to smallest dollar amount before posting them to her account ledger, shortly after midnight on March 9, 2009. Thus, the charge of $6.76, made on March 7, 2009 became the last charge to be posted to that account on that date.

24.     Notwithstanding that sufficient funds were in Plaintiff ELIZABETH KING'S Bank of America account to cover each of these transactions occurring between March 5, 2009 through March 8, 2009, Defendant assessed and automatically deducted from Plaintiff's checking account five $35.00 "overdraft item fee for activity of 03-09" charges totaling $175.00.

25.     Based on information and belief, the charges incurred by Plaintiff ELIZABETH KING are representative of hundreds of millions of dollars of such fees that Bank of America assessed its customers and automatically deducted from their checking accounts when there were sufficient funds in their accounts at the time of the transaction. This is an especially egregious wrongful taking of customers' money from

their checking accounts because Bank of America specifically approved each of these transactions and knew at the time it approved the transaction there was sufficient funds in the account to cover the transaction.

26.    Bank of America further misrepresents the accuracy and reliability of the published "account balance" or "available balance" information in its marketing materials and customer contractual agreements while encouraging customers to rely on available balance information provided to them by Bank of America.    Examples of such misrepresentations include:

a.    **Understand Credits & Debits- Bank of America Website**

**"Summary:** We post credits and debits at the end of every business day to determine the amount of money you have available. Because these transactions impact your balance, it helps to know the order in which they happen.

**Basics of Credits & Debits:** When you deposit money into your account, we credit it for the amount of your deposit. When you write a check, use your debit card, pay bills through Online Banking, or withdraw money from your account through any other means, we debit it for the amount of the transaction.

When posting debits, we generally post higher-dollar items before lower-dollar items. This gives priority to the payment of higher-dollar debits like your mortgage, insurance or car loan payments.

Bear in mind, the order in which items are posted could result in overdraft item fees or overdraft protection transfer fees if you don't maintain a sufficient available balance in your account to cover all your debits

**Your Available Balance:** To calculate your available balance, we:

- Take the amount of funds in your account at the end of the previous business day

- Add any deposits and other credits to your account that we received that day

- Subtract checks and other debits from your account that we received that day"

27.    Bank of America has failed to provide notice to customers that the published available balance information it promotes, markets, encourages and advertises as something for the customer to rely on, is inaccurate and can result in insufficient funds overdraft charges for transactions that are within the amount of stated available balance published by Bank of America.

28.    Bank of America has failed to provide notice to customers that it holds debits for days, which creates a negative balance days later, when in fact there was a positive balance at the time the transactions occurred and were approved by Bank of America.

29.    Bank of America misrepresents to customers that personal accounting will prevent overdraft fees when in fact it is of no value. Bank of America holds debits for

days, even though they are posted on its website and accounted for in computing customers' available balance, it then posts them all on one day in an order to create more overdraft fees.

30.     Finally, Bank of America has failed to provide notice and make customers aware that they can incur insufficient funds overdraft fees on transactions that, when made, were covered by sufficient funds in the account.

31.     Another service that bank of America promotes, markets and sells to its customers is the availability of current available balance information provided by Bank of America online, by telephone, by in-store representatives and at ATM's.

32.     However, when customers like Corey Phillips and Elizabeth King rely on this available balance information provided by Bank of America, they still incur insufficient funds overdraft fees for Bank of America approved purchases made within the available balance amount provided by Bank of America.   Corey Phillips and Elizabeth King relied on their "available balance" information on the "Account Activity" page for their accounts on Bank of America's website.   Corey Phillips and Elizabeth King both reviewed and relied on this "available balance" information prior to being hit with an overdraft fee.   This is because Bank of America has a practice of publishing inaccurate account balances and therefore misrepresents in all of the above mentioned ways of accessing checking account information that the "available balance" is actually what it purports to be – the amount of funds available in the checking account, and that the transactions within the "available balance" will not result in overdraft fees.

33.     Bank of America's policy of holding debits for days, rather than posting them to a customer's ledger as of the day the transaction occurred and was approved, is intentional conduct designed to created overdrafts on customer's accounts.

34.     Bank of America's rearranging of transactions by dollar amount from largest to smallest is intentional, creating the maximum amount of overdrafts, as a mathematical certainty.

### IV.      Class Action Allegations

35.     Plaintiffs initially propose that two subclasses be used in litigating this case, the "Sufficient Funds" Class Plaintiffs and the "Inaccurate Balance" Sub-Class Plaintiffs, as defined below.

36.     **The "Sufficient Funds" Class Plaintiffs**: Plaintiffs Corey Phillips and Elizabeth King each incurred insufficient funds overdraft fees in their checking accounts for transactions that, when they occurred, were covered by sufficient funds in the account.   Bank of America approved the transactions of each Plaintiff before the transaction was processed.   The Plaintiffs were not notified by Bank of America that they would incur an insufficient funds overdraft fee for an approved transaction where they had sufficient funds to cover the transaction at the time the transaction was made.

37.     Plaintiffs bring this action on behalf of themselves and a class of plaintiffs initially defined as follows:

All Bank of America customers who maintained a checking account with an Oklahoma branch office from January 1, 2008 to the present and who were assessed an insufficient overdraft fee for a Check Card Purchase,

Debit Card Purchase, or ATM transaction when there were sufficient funds

in the checking account at the time of the transaction to cover the amount of

the transaction.

Excluded from this class is any entity in which Defendants have a controlling

interest, and officers or directors of Defendants. Also excluded from this class are the

assigned Judge and members of the Court's staff.  Plaintiffs and those persons similarly

situated as described in the preceding paragraph may be collectively referred to herein as

"The 'Sufficient Funds' Class Plaintiffs."

38.    **The "Inaccurate Balance" Sub-Class Plaintiffs:** Plaintiffs Corey Phillips

and Elizabeth King relied on account available balance information provided to them by

Bank of America in entering into the transactions that resulted in an overdraft fee when

the available balance provided to them by Bank of America showed they had sufficient

funds to cover the transactions.  Plaintiffs Corey Phillips and Elizabeth King were not

notified that the account available balance information provided to them by Bank of

America was inaccurate, due to Bank of America's intentional practices of holding debits

for days and rearranging the order in which those transactions are posted to the

customer's ledgers.

39.    Plaintiffs also bring this action on behalf of themselves and a sub-class of

plaintiffs initially defined as follows:

All Bank of America customers who maintained a checking account

with an Oklahoma branch from January 1, 2008 to the present who were

assessed an insufficient overdraft fee for a Check Card Purchase, Debit

Card Purchase, or ATM transaction which, when made, showed the amount was within Bank of America's published available balance information at the time of the transaction, showing a positive available balance.

Excluded from this class is any entity in which Defendants have a controlling interest, and officers or directors of Defendants.  Also excluded from this class are the assigned Judge and members of the Court's staff.  Plaintiffs and those persons similarly situated as describe in the preceding paragraph, may be collectively referred to herein as "The 'Inaccurate Balance' Sub-Class Plaintiffs."

40.     This action is brought as a class action and may properly be so maintained pursuant to the provisions of the Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiffs reserve the right to modify the "Sufficient Funds" Class and the "Inaccurate Balance" Sub-Class definitions and the class period based on the results of discovery.

41.     **Numerosity of the "Sufficient Funds" Class and "Inaccurate Balance" Sub-Class:** the members of the "Sufficient Funds" Class and the "Inaccurate Balance" Class are so numerous that their individual joinder is impracticable.   Plaintiffs are informed and believe that there are at least hundreds of thousands of customers in the class.   Since the class member may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of class members can be ascertained.  Members of the Classes can be notified of the pending action by e-mail, mail and supplemented by published notice, if necessary.

42.    **Existence and Predominance of Common Question of Fact and Law**:
there are questions of law and fact common to the "Sufficient Funds" Class and/or the
"Inaccurate Balance" Sub-Class.   These questions predominate over any question
affecting only individual class members.   These common legal and factual issues include,
but are not limited to:

a.   Whether Defendant Bank of America assessed inappropriate overdraft
fees for transactions it approved and for which there were sufficient
funds in the account at the time of the transaction to cover the cost of
the transaction.

b.   Whether Defendant Bank of America assessed inappropriate overdraft
fees for transactions which were within the published available balance
information at the time of the transaction.

c.   Whether Defendant Bank of America promotes, markets, encourages
and advertises the available balance through ATM machines, Online,
Bank Statements, In-Store and Telephone as something on which  the
customer may rely, which is inaccurate and can result in
insufficient/overdraft charges for transactions that are within the amount
of the stated available balance provided by Bank of America.

d.   Whether Defendant, Bank of America misled customers regarding
whether it assessed insufficient/overdraft fees for transactions it
approved, and for which there were sufficient funds in the account at the
time of the transaction to cover the cost of the transaction.

e. Whether Defendant Bank of America misled customers, because the available balance information available through ATM machines, Online, in Bank Statements, In-Store and via Telephone is inaccurate and can result in insufficient/overdraft charges for transaction that are within the amount of the stated available balance provided by Bank of America.

f. Whether Defendant Bank of America misled customers regarding its policy and conduct of rearranging charges to increase the number of overdraft fees.

g. Whether Defendant Bank of America's conduct described above constitute violations of the causes of action set forth below.

43. **Typicality:** The claims of the representative Plaintiffs are typical of the claims of the members of either or both of the "Sufficient Funds" Class or the "Inaccurate Balance" Sub-Class. Plaintiffs, like all other members of the Classes, have sustained damages arising from Defendant's conduct, as alleged herein. The representative Plaintiffs and the members of the Classes were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic and pervasive pattern of misconduct engaged in by Defendant.

44. **Adequacy**: The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiffs and the members of the Classes that would make class certification

inappropriate. Counsel for the Classes will vigorously assert the claims of all Class members.

45. **Predominance and Superiority**: This suit may be maintained as a class action under Federal Rules of Civil Procedure 23(b)(3) because questions of law and fact common to the Classes predominate over the questions affecting only individual members of the Classes and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Classes to individually redress effectively the wrongs done to them. Even if class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

46. The Class Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be

utilized for the contemplated notices.  To the extent that any further notices may be required, the Class Plaintiffs would contemplate the use of additional media and/or mailings.

47.     In addition to meeting the statutory prerequisites to a Class Action, this action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

a.      Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Classes will create the risk of inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for the party opposing the Classes.

b.      The party opposing the Classes has acted or refused to act on the grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

c.      Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

i.      The interests of the members of the Classes in individually controlling the prosecution or defense of separate actions;

     ii.     The extent and nature of any litigation concerning controversy already commenced by or against members of the Classes;

     iii.     The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

     iv.     The difficulties likely to be encountered in the management of a Class Action.

## FIRST CAUSE OF ACTION

### VIOLATION OF CONSUMER PROTECTION ACT
### OKLA. STAT. TIT. 15 § 751 *ET SEQ.*

48.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

49.     Defendant provides services within the meaning of Consumer Protection Act Okla. Stat. tit. 15 § 751 et seq.

50.     Defendant is a "person" within the meaning of Consumer Protection Act Okla. Stat. tit. 15 § 751 et seq.

51.     Purchasers of Defendant's services, including plaintiffs and other members of the Classes are "consumers" within the meaning of Consumer Protection Act Okla. Stat. tit. 15 § 751 et seq.

52.     Plaintiffs' and each and every Class members' purchase of the services sold by Defendant constitutes a "transaction" within the meaning of Consumer Protection Act Okla. Stat. tit. 15 § 751 et seq.

53.     The  policies,  acts  and  practices  of  Defendant  described  above  were intended  to  result  in  the  sale  of  services  to  plaintiffs  and  the  "Sufficient  Funds"  and "Inaccurate Balance" Class members.  These actions violated, and continue to violate the Consumer Protection Act in at least the following aspects;

     a.   In violation of Okla. Stat. tit. 15 § 753(20), Defendant makes deceptive representations in connection with the services in question;

     b.   In violation of Okla. Stat. tit. 15 § 753(20), Defendant commits unfair trade practices in connection with the services in question;

     c.   In violation of Okla. Stat. tit. 15 § 753(5), Defendant represents that its services have characteristics, uses, or benefits which they do not have;

     d.   In violation of Okla. Stat. tit. 15 § 753(7), Defendant represents that its services are of a particular standard, style or model, which they are not;

     e.   In violation of Okla. Stat. tit. 15 § 753(11), Defendant knowingly makes false or misleading statements of fact concerning the price of the subject of a consumer transaction;

     f.   In violation of Okla. Stat. tit. 15 § 753(25) Defendant knowingly causes charges to be made by a billing method to a consumer for services which Defendant knew was not authorized in advance by consumer.

54.     As  a  result  of  Defendant's  actions,  each  Plaintiff  and  members  of  the Classes  have  incurred  damages  in  the  form  of  insufficient  funds  overdraft  fees  being assessed and automatically withdrawn from their checking account.

55.     Plaintiffs bring this action pursuant to Oklahoma Stat. tit. 15 § 761.1 and seek compensatory and punitive damages, restitution and injunctive relief hereunder in the form of an order enjoining Defendant from continuing to engage in the practices alleged herein.

## SECOND CAUSE OF ACTION

### MISREPRESENTATION

56.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

57.     The misrepresentations, nondisclosure and/or concealment of material facts made by Defendant to Plaintiffs and the members of the Class, as set forth above, were known by Defendant to be false and material and were intended by Defendant to mislead Plaintiffs and the members of the Class.

58.     Bank of America engaged in a standardized practice and produced and distributed standardized advertisements and informational pieces regarding the standardized practice.  The advertised practices were uniformly applied to the Plaintiffs and the class members.  Examples of the false and misrepresentative advertisements are set forth in the above "Factual Allegations."

59.     Every Plaintiff and class member who used the Defendant Bank of America's banking services necessarily relied on the advertisements and informational pieces, and was damaged as a result by incurring overdraft charges they otherwise would not have incurred.

60.     The Plaintiffs and the Class were actually misled and deceived and were induced by Bank of America to incur overdraft charges they otherwise would not have incurred.

61.     As a result of the conduct of Defendant, Plaintiffs and the Class members have been damaged by having incurred unwarranted overdraft fees assessed and taken from their checking account.  In addition to such damages, Plaintiffs seek punitive or exemplary damages pursuant to Okla. Stat. tit 23 § 9.1 in that Defendant has "acted intentionally and with malice towards others."

### THIRD CAUSE OF ACTION

#### NEGLIGENT MISREPRESENTATION

62.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

63.     Defendant had a duty to provide honest and accurate information to its customers and to prevent those customers from incurring expensive and unnecessary overdraft charges.

64.     Defendant specifically and expressly indicated to class members that Bank of America's customers' checking account balance or available balance published online, by phone, by ATM machines, and in-story inquiries is accurate and reliable, when in fact it is inaccurate and unreliable.

65.     Such misrepresentations were and are made by Bank of America through the use of the identifying term "available balance" in the various methods in which customers may access their checking account information, and through the various

marketing materials and customer agreement contracts, when in fact such information is not what it purports to be.

66.     Defendant knew, or in the exercise of reasonable diligence should have known, that the ordinary consumer and customer of Defendant's products would understand Defendant's representations concerning the terms "account balance" or "available balance" as being what they purport to be – the actual available balance at the time of the inquiry, based upon the transaction reported to Bank of America and approved by it.   Defendant also knew, or in the exercise of reasonable diligence should have known, that the ordinary consumer and customer of Defendant's products would understand the marketing materials and the terms of the customers' contracts set forth in this Complaint as indicating that the published "account balance" or "available balance" are accurate and reliable.   Any other understanding on the part of the consumers would not be reasonable given Defendant's representations.

67.     Plaintiffs and the "Inaccurate Balance" Class members justifiably relied on Defendants' misrepresentations as to their available balance and engaged in debit transactions or ATM withdrawals, while within the limits of their published "available balance," yet were assessed overdraft fees for those transactions.

68.     As a result of the conduct of Defendant, Plaintiffs and the "Inaccurate Balance" Class members have been damaged by having relied on Defendant's misrepresentations as to their available balance and have incurred unwarranted overdraft fees.

69.     In addition, by representing and posting pending charges to online accounts in real time  and including those charges in the available balance, Bank of America represented to Class members that overdraft fees would not be charged for transactions that were for a lower amount than the balance in the account at the time the transaction took place.

70.     Those representations were false as Defendant did assess and automatically deduct overdraft fees from customers' accounts even though there were funds available to cover the transactions at the time they occurred.

71.     Defendant knew, or in the exercise of reasonable diligence should have known, that Plaintiffs and ordinary customers would rely on those representations.

72.     That Plaintiff and the class members did reasonably rely on those representations.

73.     As a result, Plaintiffs and the Class Members have been damaged by being assessed expensive and unnecessary overdraft fees.

## FOURTH CAUSE OF ACTION

### CONVERSION

74.     Plaintiffs incorporate by reference and re-allege all paragraphs previously alleged herein.

75.     Plaintiffs and the Class members own and/or have the right to possess the money that is in their checking accounts.

76.     Defendant converted Plaintiffs' and the Class members' money in their checking accounts by automatically deducting accounts overdraft fees after check card,

debit card transactions or ATM withdrawals, despite the fact that Plaintiffs and the "Sufficient Funds" class members had sufficient funds in their accounts to cover these transactions at the time they were made and/or within the time that such transactions should have been posted to their accounts.

77.     Plaintiffs and the Class members have been damaged by Defendant's wrongful taking of overdraft fees from their checking accounts in an amount that is capable of identification through Defendant's records.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the "Insufficient Funds" and "Inaccurate Balance" Sub-Classes, pray for relief as follows:

a.      For an order certifying the "Insufficient Funds" Class and appointing Plaintiffs and their counsel to represent the "Insufficient Funds" Class;

b.      For an order certifying the "Inaccurate Balance" Class and appointing Plaintiffs and their counsel to represent the "Inaccurate Balance" Class;

c.      For an order awarding Plaintiffs and the "Insufficient Funds" and "Inaccurate Balance" classes damages, restitution and/or disgorgement and other equitable relief as the Court deems proper;

d.      For an order awarding Plaintiffs and the "Insufficient Funds" and "Inaccurate Balance" Classes punitive damages as to the appropriate cause of action;

e.      For an order enjoining Defendant:

1.      From continuing to use, employ, or undertake unfair methods of competition, acts and practices, or any of them, which are violative of that statute as alleged herein;

2.      Under Consumer Protection Act Okla. Stat. tit. 15 § 751 et seq. from continuing to engage in business acts and practices, or any of them which are unlawful, deceptive, unfair or fraudulent, as alleged herein; and

f.      For an order mandating that Defendant engage in a corrective campaign to correct the misperceptions Defendant's conduct created;

g.      For an order awarding Plaintiffs and the "Insufficient Funds" and "Inaccurate Balance" Classes pre-judgment and post judgment interest, as well as their reasonable attorneys' and expert witness fees and other costs pursuant to the Under Consumer Protection Act Okla. Stat. tit. 15 § 751 et seq., and other statutes as may be applicable; and for an order awarding such other and further relief as this Court may deem just and proper.

*JURY TRIAL DEMANDED.*

*ATTORNEY LIEN CLAIMED.*

Respectfully Submitted,


By:    /s/Linda G. Alexander

John C. Niemeyer OBA No. 6683
        Texas Bar No.15077000
Linda G. Alexander, OBA No. 195
Harris A. Phillips, OBA No. 14134
NIEMEYER, ALEXANDER, AUSTIN
  & PHILLIPS, P.C.
Three Hundred North Walker
Oklahoma City, OK 73102
Telephone:   (405) 232-2725
Facsimile:   (405) 239-7185

***Attorneys for Plaintiffs***